**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**UNITED STATES OF AMERICA**                                           **PLAINTIFF**

**VS.**                                  **CIVIL ACTION NO. 4:00-CV-221-TSL-LRA**

**ALDEN M. WALLACE, III, ET AL**                               **DEFENDANTS**

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

THIS CAUSE is before the Court on the Motion to Reopen Case and Extend Consent Order [#271] filed on June 12, 2008, and referred to the undersigned by Order [#272] entered by District Judge Tom S. Lee on June 12, 2008.

**PROCEDURAL HISTORY**

On December 21, 2000, the United States filed a complaint against these Defendants alleging that they had engaged in a pattern or practice of discrimination on the basis of race or color in the operation of numerous residential rental properties they owned, in violation of the Fair Housing Act, 42 U.S.C. §§ 3601 et seq. On May 23, 2002, a Consent Order was entered resolving the claims. See Consent Order, Exhibit A to Plaintiff's Motion to Reopen. Under the terms, this Court retained jurisdiction over the action for enforcement purposes for five years and three months, or until August 23,

2007.  <u>See</u>, Consent Order, pp. 4-5 (Section II) and pp. 35-36 (Section XVI).

This case was closed after entry of the Consent Order on May 23, 2002.  On January 29, 2007, the United States filed a Motion for Leave to Conduct Discovery as to Defendants' Compliance with the Consent Order [#235].  Judge Lee granted that motion by Order [#237] filed the same date and allowed ninety days for discovery.  According to the Order, the discovery allowed was for the United States to determine Defendants Alden M. Wallace and Priscilla Pringle Wallace's "interest in residential rental properties…" and their "involvement in the property management activities from May 23, 2002, to the present."  This discovery was stayed by Order filed April 9, 2007, in order for the parties to attempt to settle the controversy.  The efforts were unsuccessful.  The initial Motion to Reopen Case [#249] was dismissed as moot by Order [#270] entered by Judge Lee on March 17, 2008, because it was not ripe for a decision.  Discovery had not been completed.

The instant Motion to Reopen [#271] was filed on June 12, 2008, and hearings, as well as telephonic and live status and settlement conferences, were conducted on September 3, 8, & 16, 2008; October 16 & 17, 2008; November 13, 2008; January 9, 2009; February 9, 23 & 25, 2009, and on March 5, 2009.  The evidentiary hearing was conducted on October 17,

2008, and completed on January 9, 2009. At the conclusion of the January 9th hearing, the parties announced that settlement was imminent; however, the settlement was not consummated. Although counsel attempted to settle the controversy on many occasions during this period, their attempts were unsuccessful. After the settlement efforts failed, the undersigned directed that supplemental briefs be submitted, and the United States filed its Supplemental Memorandum Concerning Relief Sought by Motion to Reopen Case and Extend Consent Order [#296] on March 23, 2009. Defendants filed their Response to the Supplemental Memorandum [#298] on April 13, 2009.

## ARGUMENTS OF THE PARTIES

The Consent Order enjoins Defendants from future discrimination on the basis of race. It also contains affirmative injunctive provisions. Paragraphs 3 & 4, pp. 4-5, provide as follows:

> 3. With the exceptions of Sections III (Non-Discrimination Injunction) and IV (Non-Management Agreement) and as otherwise specifically provided, this Order shall be in effect for a period of five (5) years and three months from the date of this Order. During this period, the Court shall retain jurisdiction of this case to assure that the terms and/or requirements of this Order are properly implemented and maintained.
>
> 4. The United States may move the Court to extend the period in which the affirmative injunctive provisions of this Order are in effect if it determines that Defendants have *likely violated one or more terms of the Order*, or if the

interests of justice otherwise require an extension of the terms of the Order.

(Emphasis added.)

The United States charges in its Motion to Reopen that the Wallace Defendants have violated the terms of the Consent Order by:

1. Continuing to remain actively involved in the management of the subject properties (in violation of Section IV);

2. Changing management companies without the knowledge and/or approval of the United States (in violation of Section IV, ¶ 11);

3. Failing to provide notice of the acquisition or sale of dwellings (in violation of Section IV, ¶ 4); and,

4. Failing to submit semi-annual compliance reports to the United States (in violation of Section IX).

See Motion to Reopen, document #271, p. 2.

In its Supplemental Memorandum [#23], the United States requests additional relief beyond the extension of the term of the 2002 Consent Order for a two year period. Specifically, the United States requests that Defendants be ordered to:

1. Promptly file with the Court an affidavit that identifies all the residential rental properties the defendants have owned or managed at any time since entry of the 2002 Consent Order and the current ownership or management status of those properties; and

2. Promptly submit to the United States a compliance report as specified in the 2002 Consent Order that covers the previous year.

United States' Supplemental Memorandum, document 296, p. 2. As authority for these requests, Plaintiff refers to the Consent Order which recites that this Court retains jurisdiction "for the purpose of the enforcement … of this Order" (Sec. XVI) and "to assure that the terms and/or requirements of this Order are properly implemented and maintained" (Sec. II, ¶3). The Order also specifically provides that the Court may "impose any remedy authorized by law or equity" (Sec. XII) in the event of a violation.

In response to Plaintiff's motion to reopen, the Wallace Defendants contend that the United States has offered no reliable evidence of the Wallaces' intent to discriminate against its tenants. Further, they contend that the Consent Order, XIII., imposes the burden of proof on Plaintiff to warrant a modification [extension]. Any violations shown by Plaintiff were only minor and involved Defendants' reactions to emergency situations, or to Defendants' or the management companies' misunderstanding concerning the exact language of certain terms. Any violations were *de minimus* and do not reflect that the Wallaces engaged in any discrimination related to housing practices.

Specifically, the Defendants note that the Consent Order places the duty to submit semi-annual compliance reports on the management companies, not the Wallace Defendants. Consent Order, Sec. IX (1)(b), p.

5

30. The Wallace Defendants did not contact the management companies to see if they had sent the reports. They contend that to do so would have violated the Consent Order's provision prohibiting them from having any involvement with, interference with, and oversight over the management companies' responsibilities. Defendants concede that not all of the semi-annual reports were provided but contend that the management companies failed to submit them, and the United States did not notify Defendants of its failure to receive them.

Defendants also contend that the correct property list was never attached to the Consent Order, and that many of the properties on the list have never been owned by the Defendants. Defendants' Response, #279, pp. 17-18. They assert that that must be why the United States contends that the Defendants have transferred approximately 75 properties. Plaintiff's Memorandum, [#272], p. 10. Defendants contend that the list finally attached to the Consent Order is inaccurate, and properties not owned by them were never deleted from the list. Accordingly, they cannot be held responsible for lands they have never owned, or that they owned more than twenty years ago. The Wallaces charge that they gave the corrected list to their previous attorney, but he failed to have the list revised according to their handwritten revisions.

According to Defendants, the 38-page Consent Order is "long, tedious, and in places, difficult to understand."  Defendants' Response, #279, p. 19. They contend that the Order has no concern for "substantial compliance" or acting in "good faith" to comply, and that the burden of compliance unfairly rests solely with Defendants.

Defendants contend that the United States has come into Court with "unclean hands" because they acted in concert with Kirk Marsh to obtain access to over 16,000 documents without the knowledge of the Wallaces. They assert that the Consent Order's provision stating it is binding to the properties' "successors in interest" makes the properties unmarketable. Defendants' Response, #279, p. 29.  Defendants request the Court to allow the Consent Order to expire by its own terms; they acknowledge that they are permanently enjoined from managing the properties and from discriminating based upon race.

## **FINDINGS OF THE UNDERSIGNED**

The undersigned has considered the testimony of the witnesses and the argument of counsel and exhibits presented by both sides in this case. This is a controversy which should be settled among the parties, and the undersigned has unsuccessfully attempted to facilitate such a settlement. As it stands, the Consent Order provides that its terms follow the property in any sale, and that prohibits finding buyers. (See p. 4 of the Order, the

7

Order is binding on Defendants' "successors in interest.") The Wallaces submit that they want to sell all of the remaining properties, and the United States agrees that they should be able to do so and are willing to release properties as they are sold. The United States wants to be assured that any sale is "arms length." The Wallaces contend that the guaranties required by the United States effectively destroy potential sales of the properties. The Wallaces complain about how much money has been lost by them having to incur attorneys' fees and participate in discovery; they claim to have lost many of the properties to foreclosure due to the effects of this litigation.

Having considered all of the evidence, the undersigned is compelled to find that the Wallaces have violated provisions of the Consent Order. By its own terms, the United States was given the right to move to extend the period if the Court determines that "Defendants have likely violated one or more terms of the Order…." Consent Order, Section II, ¶ 4. Although the United States contends that "substantial" violations have occurred, the Order does not require proof of such substantial violations. It merely requires a finding that Defendants have "likely" violated one or more provision. The Order does **not** require that discrimination be proven in order for the term to be extended, and the undersigned does not make a finding in this regard.

The undersigned does find that there is evidence that the Wallaces remained active in the management of the properties, even though some of

the activity may have been in response to emergencies.  The testimony given by Tracey Gill, Susan Triplett, and Laconda Harrison is sufficient evidence to support a finding that Defendants have "likely" violated this provision.

Susan Triplett testified that she rented property from Missy Wallace beginning in August, 2005; Ms. Wallace discussed the property with her, gave her the lease, gave her the keys and took her rent money.  This contact occurred at Affordable Properties at its Valley Road office, and Ms. Wallace and a "Miss Glenda" [Glenda Sampier Davis] were usually at that office.  On March 8, 2006, the testimony of Tracey Gill confirms that Missy Wallace was involved in the management of the subject properties.  Danielle Carney's testimony confirms that both Wallaces were involved in the management of the properties when she worked for them, at Affordable Properties, from December, 2004, until May, 2005.

The evidence is also sufficient for the undersigned to find that the Wallaces changed management companies on five occasions without notifying the United States or obtaining its approval.  The Wallaces do not dispute this fact; they contend that the new company would notify the United States of the change, and the United States did not contest the change.  Yet, the Consent Order provides that if the originally selected company is unable or unwilling to continue in its role, "Defendants shall

notify all parties, and retain, subject to approval by the United States, a new Approved Management Company…." Consent Order, Sec. IV, ¶ 11. Additionally, the Wallace Defendants were required to notify each management company in writing of the Defendants' nondiscriminatory rental policies, its obligations under the Order, and notice that a violation of the Order could subject it to termination of its contract and possible court sanction; the Defendants were required to provide copies of these communications to the United States. (Sec. IV, ¶ 5). The Order also obligates Defendants to provide a copy of the contract between them and the management companies to the United States. (Sec. IV, ¶ 3.)

The testimony of Joy Larry, Department of Justice, is sufficient to support a finding that these Consent Order obligations were not fulfilled by Defendants; Defendants have not rebutted this evidence. She testified that the United States did not receive any compliance reports in 2004, 2007, and 2008; it received one in 2005. The United States received no notifications from Defendants that it had provided written notice to any management company of its nondiscriminatory rental policies, or of the company's obligations under the consent order, or that a violation could subject the company to possible court sanctions. The undersigned finds that violations have been proven "likely" as to these provisions.

Ms. Larry also testified that the United States received no notice that the Defendants had sold or transferred or acquired any interest in any rental property. The evidence before the Court is confusing in this regard. According to Defendants, the list of properties attached to the Consent Order is erroneous; it lists properties that were not owned by the Wallaces when the Order was entered. These properties were either never owned by them or were transferred prior to the date the Complaint was filed. Defendants contend that their attorney was responsible for the faulty exhibit. Their copy indicates properties that should have been deleted prior to the entry of the final Consent Order.

The United States contends that numerous properties in the Consent Order have been sold or transferred since its entry. It asserts that approximately 75 properties have been sold or transferred, and that the Wallaces have purchased approximately 50 properties and a mobile home park in Quitman, Mississippi, with thirty-six lots. Its evidence includes the testimony of Ms. Larry, along with the exhibits presented.

Defendants deny that these transferred have occurred, contending that the initial list was inaccurate due to their attorneys' failure to properly edit the list. The undersigned is at a loss to determine the properties which *should have been included* as subject to the Consent Order. The Court must accept the exhibit which was entered in the court file. From that list, the

undersigned must find it "likely" that transfers or sales or purchases have been made without the appropriate notice being given to the United States. If properties on the Exhibit were not owned by the Wallaces at the time of the Consent Order, then the parties should have presented a revised list of properties to the Court as an amended exhibit to the Consent Order.

The Consent Order requires that the Defendants notify the United States in writing after they acquire or sell any dwelling in which any Defendant has an ownership, management, or financial interest. See Consent Order at p. 9, ¶ 4 and p. 31, ¶ 3. Yet, the evidence confirms that Defendants never notified the United States of any transfers, and that at least some transfers were made.

## **RECOMMENDATIONS**

Because the evidence presented in this case does indicate that Defendants have likely violated the terms of the Consent Order in the ways set forth above, the undersigned recommends that this case be reopened and that the term of the Consent Order be extended for the two year period initially requested, or until August 23, 2009. It is the undersigned's intent that the Wallaces be given the opportunity to prove during this period that they are in full compliance with the terms of the Consent Order, and the United States should communicate with the Wallaces and fully inform them during this period of what it perceives to be lacking in the Wallaces's

adherence. In an effort to facilitate the intent of the Consent Order, during this period, the parties should be directed as follows:

1. The parties shall confer and determine precisely what properties should have been included in the Consent Order, i.e., were in fact owned by Defendants when the Consent Order was entered. The Exhibit should be revised to accurately reflect the true properties covered. The Court should enter an Order which adopts the Amended Exhibit, dating back to the original date of entry.

2. Defendants should file an affidavit with the Court identifying all the residential rental properties the defendants have owned or managed at any time since entry of the 2002 Consent Order. If Defendants have transferred any properties since the 2002 Order, the affidavit should explain these transfers and set forth the current ownership or management, if known.

3. Defendants should file compliance reports as specified in the 2002 Consent Order that cover the years 2007-2009.

4. On or before June 18, 2009, the United States should designate an agent who will be assigned as the liaison for the Wallaces to work with during the remainder of the Consent Order term. This liaison shall communicate directly with defense counsel regarding any deficiencies in compliance and/or requirements for compliance to be proven.

5. The terms of the Consent Order shall be amended to provide that if the Wallaces find independent buyers for any portion of the subject property during the remainder of the term, that property may be sold and immediately released from the terms of the Consent Order. The sale shall include no reversion or buy-back provision for a period of at least ten years. An Affidavit from the Wallaces describing the proposed buyers and their relationship with the Wallaces shall be filed, and the Wallaces shall certify that the sale is "arms length." If challenged by the United States, the Court shall make the final determination of whether any proposed sale is "arms length."

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, *Douglass v. United Services Auto. Ass'n.*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 3rd day of June, 2009.

S/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE