```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF MISSISSIPPI
                           EASTERN DIVISION
```

UNITED STATES OF AMERICA                                      PLAINTIFF

VS.                                    CIVIL ACTION NO. 4:00CV221TSL-LRA

ALDEN M. WALLACE, III, ET AL.                                DEFENDANTS


<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the objections of defendants Alden and Priscilla Wallace to the June 3, 2009 report and recommendation of United States Magistrate Judge Linda R. Anderson. The government has responded to defendants' objections, and the court, having considered the parties' submissions and the record in this case, concludes that the factual findings of the magistrate judge should be adopted in their entirety and that the recommended relief be modified as set forth herein.

As the magistrate judge observed, the government commenced this case on December 21, 2000, alleging that the Wallaces and other entities owned and/or operated by the Wallaces had engaged in a pattern or practice of discrimination on the basis of race in the operation of residential rental properties that they owned, all in violation of the Fair Housing Act, 42 U.S.C. § 3601 <u>et</u> <u>seq.</u> After two years of litigation, the parties entered into and the court approved a Consent Order. Under the terms of the Consent

Order, the court retained jurisdiction over the action for enforcement purposes for five years and three months, or until August 23, 2007. On January 29, 2007, the government, representing it had a reasonable basis to believe the Wallaces had not complied with the Consent Order, sought and was granted an opportunity to conduct discovery as to defendants' compliance with the Consent Order. On August 22, 2007, the day before the consent order was originally scheduled to expire, the court extended the Consent Order so the parties could complete discovery, following which the court would hold a hearing on the merits to determine whether the Consent Order should expire. After discovery and extensive efforts to mediate a settlement, the magistrate judge held an evidentiary hearing and thereafter issued her findings of fact and proposed recommendations.

In her report and recommendation, the magistrate judge found that the Wallaces had violated the Consent Order in three ways: (1) by remaining active in the management of the properties; (2) by changing management companies on five separate occasions without notifying the United States or obtaining its approval; and (3) by failing to notify the government that they had sold, transferred or acquired any interest in any rental property. As relief, the magistrate judge recommended that the case be reopened and the Consent Order be extended for the two-year period initially requested, or until August 23, 2009, so "that the

Wallaces [could] be given the opportunity to prove during this period that they are in full compliance with the terms of the Consent Order." In this vein, she further recommended that the parties be directed as follows:

> 1. The parties shall confer and determine precisely what properties should have been included in the Consent Order, i.e., were in fact owned by Defendants when the Consent Order was entered. The Exhibit should be revised to accurately reflect the true properties covered. The Court should enter an Order which adopts the Amended Exhibit, dating back to the original date of the entry.
> 2. Defendants should file an affidavit with the Court identifying all the residential rental properties the defendants have owned or managed at any time since entry of the 2002 Consent Order. If Defendants have transferred any properties since the 2002 Order, the affidavit should explain these transfers and set forth the current ownership or management, if known.
> 3. Defendants should file compliance reports as specified in the 2002 Consent Order that cover the years 2007-2009.
> 4. On or before June 18, 2009, the United States should designate an agent who will be assigned as the liaison for the Wallaces to work with during the remainder of the Consent Order term. This liaison shall communicate directly with defense counsel regarding any deficiencies in compliance and/or requirements for the compliance to be proven.
> 5. The terms of the Consent Order shall be amended to provide that if the Wallaces find independent buyers for any portion of the subject property during the remainder of the term, that property may be sold and immediately released from the terms of the Consent Order. The sale shall include no reversion or buy-back provision for a period of at least ten years. An Affidavit from the Wallaces describing the proposed buyers and their relationship with the Wallaces shall be filed, and the Wallaces shall certify that the sale is "arms length." If challenged by the United States, the Court shall make the final

determination of whether any proposed sale is "arms length."

The Wallaces object that the magistrate judge failed to consider their arguments against reopening the case, "fail[ed] to acknowledge that there has never been any proof or admission of discrimination in this case," extended the Consent Order without having found any "substantial violations" of the Consent Order, made unsupportable credibility findings, and granted unwarranted relief.[1]  The government urges that the magistrate judge's factual rulings are supported by the record and that her recommended relief is commensurate with the violations found.  The government further suggests that, in light of the fact that the August 23, 2009 date established by the magistrate judge for expiration of Consent Order has come and gone, the Consent Order should be extended until November 23, 2009 so as to give the parties time to comply with proposed remedial relief.  Based on the following, the court concludes that the factual findings should not be disturbed and that the relief should be modified as set forth herein.

Under Rule 72(b)(3) of the Federal Rules of Civil Procedure:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive

---

[1] While the Wallaces complain generally about the discovery allowed in this case, they do not appeal any of the allegedly adverse discovery rulings.

4

> further evidence; or return the matter to the magistrate
> judge with instructions.

In reviewing objections to a motion referred to the magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B), the court "is not required to conduct a de novo hearing of the witness concerning credibility matters that a party objects to, at least if the district judge accepts the credibility findings of the magistrate." Calderon v. Waco Lighthouse for the Blind, 630 F.2d 352, 356 (5th Cir. 1980).[2] Instead, the court's "deference to the magistrate's credibility determinations is appropriate when they are supported by the record." United States v. Gibbs, 421 F.3d 352 (5th Cir. 2005) (upholding the district court's acceptance of the magistrate judge's credibility determinations on motion to suppress referred to magistrate judge under § 636(b)(1)(B))).

As an initial matter, while the language of the Consent Order certainly could have been more precise on this point, it is clear to the court that, in order to extend the period in which the affirmative injunctive provisions are in effect, contrary to the Wallaces' assertion otherwise, the government was not required to prove either that the Wallaces had engaged in discriminatory

---

[2] Per Calderon, the "district court cannot make a 'de novo determination' of the credibility of a witness without at least reading a transcript or listening to a tape recording of the testimony of the witness." Calderon v. Waco Lighthouse for the Blind, 630 F.2d 352, 356 (5th Cir. 1980). In this instance, the court has obtained and reviewed the transcripts from the evidentiary hearing.

5

conduct or that they had committed "substantial violations" of the terms of the Consent Order. Instead, the Consent Order provides:

> With the exceptions of Sections III (Non-Discrimination Injunction) and IV (Non-Management Agreement) and as otherwise specifically provided, this Order shall be in effect for a period of five (5) years and three months from the date of this Order. During this period, the Court shall retain jurisdiction of this case to assure that the terms and/or requirements of this Order are properly implemented and maintained.
>
> The United States may move the Court to extend the period in which the affirmative injunctive provisions of this Order are in effect if it determines that Defendants have likely violated one or more terms of the Order, or if the interests of justice otherwise require an extension of the terms of the Order.

By their objections, defendants have seized on language in the court's August 22, 2007 order, which granted the government's motion to stay the expiration of the Consent Order and which allowed an extension of the discovery deadline to allow the government an opportunity to prove its allegations of "substantial violations." However, by the August 2007 order, the court was not purporting to interpret the standard of proof for extending the terms of the Consent Order; rather, it was merely acknowledging the government's contention that "substantial violations" had occurred.

Moreover, the Consent Order plainly does not require that the government prove intentional discrimination (and the magistrate judge stated she was making no determination on this issue) in order for the term of the Consent Order to be extended. Rather,

6

in the court's view, the language of the Consent Order is most reasonably read to require that the government show that it was likely that the Wallaces had violated any provision of the Consent Order.[3] This was undeniably shown. Indeed, in their objections, defendants do not even challenge the magistrate judge's finding that they changed management companies without notifying the government or obtaining its approval. This was a clear violation of the Consent Order, and in their objections, defendants have not contended otherwise. They simply have not addressed this finding at all.

As to the findings to which they do object, the court is satisfied that the government demonstrated each additional violation found by the magistrate judge. Defendants first take issue with the finding that they sold or transferred property without the required notification to the government. While acknowledging that the Consent Order required that they notify the United States in writing after they acquired or sold any dwelling in which any defendant had an ownership interest, according to the Wallaces, they never actually owned the properties that the

---

[3] By its terms, the Consent Order appears to contemplate relief for any violation thereof upon proof by a preponderance of the evidence. The Wallaces suggested at the hearing that since this is in effect a contempt proceeding, the standard for relief is clear and convincing evidence. Even if that were the case, since it is apparent to the court that there is indisputable proof that the Wallaces did, in fact, violate at least one or more terms of the Consent Order, the government has met this more stringent standard.

7

government now believes that they sold in violation of the order. Defendants submit that, in relying on the testimony of Department of Justice employee, Joy Larry, who opined that "the United States received no notice that the Defendants had sold or transferred or acquired any interest in any rental property," the magistrate judge failed to acknowledge certain portions of Larry's testimony regarding the properties. Specifically, according to defendants, the magistrate judge failed to take into account Ms. Larry's testimony that she was never provided with subsequent, corrected copies of a property list. Defendants maintain that because Ms. Larry was relying on an incorrect property list supplied by the government and not on an accurate list prepared by defendants in February 2009, the magistrate judge's finding on this issue should be overruled.

Defendants' objection is not well taken. The property list upon which Ms. Larry relied was the list prepared by defendants' attorney and appended as an exhibit to the 2002 Consent Order. As the magistrate judge correctly observed, "[i]f the properties on the Exhibit were not owned by the Wallaces at the time of the Consent Order, then the parties should have presented a revised list of properties to the Court as an amended exhibit to the Consent Order." The magistrate judge's decision to rely on the property list attached as an exhibit to the Consent Order was not in error, nor was her conclusion that the Wallaces violated the

8

Consent Order by failing to provide the required notice of sale or transfers of property.

Regarding the magistrate judge's finding that the Wallaces remained active in the management of the property, defendants object to the court's reliance on the testimony of Laconda Harrison and Danielle Carney. Laconda Harrison offered testimony to the effect that when she rented property from Affordable Properties in 2005 and again in 2006, she twice dealt with Priscilla Wallace. In the first instance, Mrs. Wallace made the decision that Harrison's prorated rent would not be returned after Harrison concluded that the property was not habitable. On the second occasion, Mrs. Wallace made an adjustment to the rental amount for the house that Harrison sought to lease. And Danielle Carney testified that she managed an apartment complex for the Wallaces in the Spring of 2005. Tracey Gill, a former Justice Department "tester", testified that she visited the offices of Affordable Properties in April 2006 and had a face-to-face interaction with Mrs. Wallace regarding properties available for rental.[4] Defendants argue that the testimony of these witnesses was not entitled to credence for a variety of reasons. However, the magistrate judge had an

---

[4] According to the Consent Order, even during any interim period between retention of approved management companies, the Wallaces were prohibited from "face-to-face or telephonic communications with tenants or prospective tenants."

9

opportunity to observe these witnesses firsthand and the court finds that her determinations are supported by the record.

Furthermore, even were the court to exclude the testimony of Harrison, Carney and Gill, there remains the unobjected-to testimony of Susan Triplett, who testified that she rented property from Priscilla Wallace in August 2005, that Mrs. Wallace discussed the property with her, gave her the lease, gave her the keys and took her rent money. This testimony alone is a sufficient basis upon which to conclude that Mrs. Wallace was participating in the management of the property and thus, that the terms of the Consent Order were violated.

Having addressed defendants' objections to the factual findings and having concluded that the magistrate judge's findings should not be overruled, the court now turns to the proposed remedial provisions. The magistrate judge recited in the report and recommendation that her purpose in reopening the case and ordering "relief" for the violations she identified was to give the Wallaces an opportunity to prove that they are in full compliance with the terms of the Consent Order. However, given that the magistrate judge has already concluded that the Wallaces violated the terms of the Consent Order in at least three respects, it is not possible for them to now prove that they are in full compliance. This cannot be accomplished and thus the purported remedial provision provides no remedy at all. Indeed, many of the

10

recommendations seem to require compliance with the terms of the Consent Order for the sake of compliance. Accordingly, in order to avoid needless drawing out this already protracted litigation, the court concludes that the Consent Order should remain in effect until November 23, 2009 only so as to give defendants an opportunity to file a compliance report which covers the years 2007 to 2009. The court declines to adopt the remaining recommendations.

Based on the foregoing, the court adopts the factual findings of the magistrate judge and the recommendation that defendants should file a compliance report for the years 2007 to 2009.

SO ORDERED this 15th day of September, 2009.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE